UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.C., | No. 2:16-cv-02210-KJM-DMC |
| Plaintiffs, | |
| v. | ORDER |
| PARADISE HIGH SCHOOL, | |
| Defendants. | |

The parties' cross-motions for summary judgment are before the court. ECF Nos. 37, 42. Each party has filed an opposition, ECF Nos. 55, 56, and a reply, ECF Nos. 59, 61. On October 19, 2018, the court heard oral argument on the motions. ECF No. 64. For the reasons set forth below, plaintiff's motion is DENIED, and defendant's motion is GRANTED.

I.  BACKGROUND

    A.  Factual Disputes and Evidentiary Objections

The following facts are undisputed unless otherwise stated. Where a genuine dispute exists, the court draws reasonable inferences in favor of the non-moving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). This is true even where cross-motions are filed, as each motion must be considered on its own merits. *Nat'l Grange of the Order of Patrons of Husbandry v. California State Grange*, 115 F. Supp. 3d 1171, 1177 (E.D. Cal. 2015), *aff'd*, 715 F. App'x 747 (9th Cir. 2018). Parties may object to the evidence cited by another party to prove

the undisputed facts. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). But the evidentiary admission standard at summary judgment is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be cured at trial. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Here, the court notes and reviews objections, if relevant, as they arise.

B.  Factual and Procedural Background

At all times relevant to this dispute, plaintiff ("C.C.") was a minor, diagnosed with Attention Deficit Disorder ("ADD"). Compl. ¶ 5, ECF No. 1; Defs.' Undisp. Fact ("DF") 1, 3, ECF No. 37-2. In 2014, while attending Santa Rosa High School, C.C. was placed on a specialized education program ("504 plan") to accommodate his individual education needs in light of his ADD. DF 5. C.C.'s 504 plan was entirely academic in nature, and contained no component ensuring social integration. DF 6. While he was a freshman at Santa Rosa High School, C.C.'s family abruptly moved to Paradise, California, and he began attending Paradise High School toward the end of that same school year. DF 8, 9. Although C.C. is unable to accurately recall, there are no records showing incidents of bullying or abuse involving C.C. during the remainder of his freshman year at Paradise High. DF 10; Pl.'s Resp. to Undisp. Fact ("PDF") ¶ 10, ECF No. 56-1. On August 17, 2015, C.C., his mother and school officials attended a meeting to develop a 504 plan to aid C.C. throughout his time at Paradise High. DF 11. The 504 plan contained two accommodations: (1) that his notes be reviewed to ensure he remained organized, and (2) that he be permitted extra time to complete classwork when necessary and when requested. DF 12. Neither C.C. nor his mother asked the school to make additional accommodations with respect to social or extracurricular activities. DF 15. Both reviewed and signed the 504 plan. DF 14.

While at Paradise High, C.C. became friendly with two fellow classmates: Faith George and Justin Hoskins. DF 16. C.C. contends Justin was aware he suffered from a blood clotting disorder and assaulted him on at least one occasion prior to the underlying incident. Pl.'s

Undisp. Fact ("PF") 3, ECF No. 42-2; Defs.' Resp. to Undisp. Fact 3 ("DPF"), ECF No. 55-3. On August 28, 2015, the three classmates attended a football game at Paradise High. DF 17. The school supplied four individuals to supervise the game. PF 22. During the game, Justin punched C.C. in the head more than once, breaking his nose and allegedly rendering him unconscious. PF 6; DPF 6. The attack was caused, at least in part, by Justin's jealousy stemming from C.C.'s relationship with Faith. DF 23.

On September 16, 2016, C.C. sued defendants Paradise High School and Paradise Unified School District (collectively "defendants"), seeking damages under Title II of the Americans with Disabilities Act ("ADA") of 1990, and § 504 of the Rehabilitation Act of 1973. ECF No. 1. Defendants move for summary judgment on both claims. ECF No. 37. C.C. moves for partial summary judgment as to liability only. ECF No. 42. The parties filed oppositions and replies. ECF Nos. 55, 56, 59, 61.

II. <u>LEGAL STANDARD</u>

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden, which requires "com[ing] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, however, the burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). To carry their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or

show [ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.

III. <u>ANALYSIS</u>

    A.    <u>C.C.'s Motion for Partial Summary Judgment</u>

C.C. moves for summary judgment on the issue of liability for Claim One under Title II of the ADA, and Claim Two under § 504 of the Rehabilitation Act. Because both claims are evaluated under a single framework, discussed below, they are addressed in unison.

        1.    <u>ADA and Rehabilitation Claims</u>

Title II of the ADA provides, in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be

4

subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. For purposes of the analysis required here, the court treats the two statutory texts as one, and evaluates the claims under a single analytical framework. *Zukle v. Regents of University of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). To prevail under Title II of the ADA or § 504, a plaintiff must show: "(1) [he] is a qualified individual with a disability; (2) [he] was denied a reasonable accommodation that [he] needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (quotations omitted).

Whether or not plaintiff satisfies the second prong, reasonable accommodation, is the greatest source of contention here, as discussed in more detail below. Prong two can be satisfied in one of two ways: (1) "by showing that the federally funded program denied [C.C.] services that [he] needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations," or (2) "by showing that the program denied [him] meaningful access to public education through another means, such as by violating a regulation that implements section 504's prohibitions." *Id*. In other words, C.C. must show the school either denied an accommodation request it should not have, or failed to comply with a regulation it should have.

### a) Prongs One and Three: Qualified Individual and Federally Funded Program

Here, prongs one and three of the ADA and § 504 analysis are not materially disputed. The ADA defines a qualified individual as someone with a "disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A public entity, as pertinent here, is defined as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* § 12131(1)(B).

As relevant to this case, C.C. was diagnosed with ADD in elementary school. DF 3. His ADD triggered the need for a 504 plan at both Santa Rosa High and Paradise High. DF 5, 12. C.C. also claims he suffers from a blood-clotting disorder. ECF No. 42-1 at 5. Defendants, however, object to the assertion that C.C.'s qualifying disability is based on a blood-clotting disorder, rather than ADD alone. ECF No. 55-3 at 2. Because C.C.'s ADD diagnosis is undisputed, and the complaint's only reference to a qualifying disability is to ADD, Compl. ¶¶ 5, 11, the court need only consider ADD as the qualifying disability in its analysis. This distinction, however, has no material influence on the outcome of the underlying motions. Therefore, because C.C.'s ADD falls within the statutory definition, and there is no dispute as to whether ADD is a qualifying disability, the first prong is satisfied on that basis alone. Similarly, the third prong is satisfied because Paradise High and Paradise Unified School District ("PUSD") are public entities in receipt of federal funding. PF 19, 20.[1]

      b)  Prong Two: Reasonable Accommodation

Of the two ways the reasonable accommodation prong can be satisfied, C.C. chooses to pursue the latter: "by showing that the program denied [him] meaningful access to public education . . . by violating a regulation that implements section 504's prohibitions." ECF No. 42-1 at 6–8; *Paradise Valley*, 815 F.3d at 1204. C.C. does not claim he made an affirmative accommodation request for supervision based on his susceptibility to bullying; rather, he claims that "Dear Colleague Letters,"[2] issued by the U.S. Department of Education in 2013 and 2014, set forth comprehensive guidelines for preventing bullying of children with disabilities, and

---

[1] Defendants object to the internet links provided by C.C. to support the assertion that Paradise High and PUSD are eligible public entities. ECF No. 55-3 at 11. As provided by Federal Rule of Evidence 201(b), the court, *sua sponte*, takes judicial notice of the following websites provided by C.C. and finds that they provide credible support for the assertion: http://phs.pusdk12.org/About-Us/index.html; http://www.pusdk12.org/About-Us/index.html; https://www.cde.ca.gov/nr/ne/yr17/yr17rel22.asp. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("[P]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies" are frequently subject to judicial notice).

[2] "Dear Colleague Letters" are explained in detail below.

defendants' failure to comply with those guidelines constitutes a regulatory violation, satisfying the reasonable accommodation prong. *See* ECF No. 42-1. Specifically, C.C. identifies two preventative measures defendants failed to follow: (1) adequate supervision at extracurricular events, and (2) monitoring bullying incidents involving disabled students. *Id.* at 7. These failures, C.C. argues, coupled with the general vulnerability of students with disabilities, demonstrate defendants' failure to provide a reasonable accommodation. *Id.* at 8. Further, C.C. avers that defendants' actual knowledge of the need for an accommodation is irrelevant if it is clear defendants failed to comply with an applicable regulation, which amounts to putting defendants on notice of an "obvious" accommodation need. *Id.* at 9.

Defendants oppose, arguing there must be a sufficient nexus between the qualifying disability and the harm sustained. ECF No. 55 at 5–8. Further, in their reply, defendants assert that Dear Colleague Letters are not regulations, do not equate to an obvious accommodation need, and C.C.'s liability claims under the ADA and § 504 are merely veiled claims for denial of a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), even though plaintiff has not relied on that statute. ECF No. 59 at 4–7 (referencing Act found at 20 U.S.C. § 1400 *et seq*.).

C.C. may satisfy the reasonable accommodation prong "by showing there was a 'violation of one of the regulations implementing' section 504, if such violation denied the plaintiff meaningful access to a public benefit." *Paradise Valley*, 815 F.3d at 1204 (quoting *Mark v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010)). But a regulation may only be enforced if it "'authoritatively construe[s]' the statute; regulations that go beyond a construction of the statute's prohibitions do not fall within the implied private right of action, even if valid." *Id.* At 1204–05 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001)).

A Dear Colleague Letter is a guidance document issued by a government agency providing insight into that agency's interpretation or application of a particular statute, regulation or rule. *See, e.g.*, *Sterrett v. Cowan*, 85 F. Supp. 3d 916, 937 (E.D. Mich. 2015) ("[A] 'Dear Colleague' letter is a guidance document issued by the U.S. Department of Education pursuant to

its regulatory authority under 72 Fed. Reg. 3432."[3]), *vacated on other grounds*, No. 2:14-CV-11619, 2015 WL 13719720 (E.D. Mich. Sept. 30, 2015); *see also Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 462 n.7 (S.D.N.Y. 2015) (defining Dear Colleague Letter as a "significant guidance document" as issued by the Office of Management and Budget); *Doe v. Univ. of Arkansas-Fayetteville*, No. 5:18-CV-05182, 2019 WL 1493701, at *1 n.2 (W.D. Ark. Apr. 3, 2019) ("A 'Dear Colleague Letter' is a guidance document . . . intended to inform schools of how the Office of Civil Rights evaluates whether they are complying with their Title IX obligations.") (citation omitted).

In *J.M. v. Dep't of Educ., State of Hawai'i*, the district court specifically addressed the question of what weight Dear Colleague Letters should be afforded within the regulatory framework:

> This Court is not aware of any Ninth Circuit case addressing what, if any, weight courts should give to the OCR's[4] Dear Colleague letters. This Court therefore CONCLUDES that the OCR's 10/21/14 Dear Colleague Letter is merely aspirational. Because the 10/21/14 Dear Colleague Letter is merely aspirational and the responses to bullying described in the letter merely provide guidance for schools, not requirements, this Court does not reach the issue of whether the DOE substantially complied with the eight responses described in the letter.

224 F. Supp. 3d 1071, 1079 (D. Haw. 2016), aff'd sub nom. J.M. by & through Mandeville v. Matayoshi, 729 F. App'x 585 (9th Cir. 2018), and overruled on other grounds by R.E.B. v. State of Hawaii Dep't of Educ., 870 F.3d 1025 (9th Cir. 2017). Although J.M. addressed claims under the IDEA, the reasoning remains consistent with the Supreme Court's general treatment of agency guidance letters, such as Dear Colleague Letters.

---

[3] 72 Fed. Reg. 3432-01 provides, in pertinent part: "The Office of Management and Budget (OMB) is publishing a final Bulletin entitled, "Agency Good Guidance Practices," which establishes policies and procedures for the development, issuance, and use of significant guidance documents by Executive Branch departments and agencies. This Bulletin is intended to increase the quality and transparency of agency guidance practices and the significant guidance documents produced through them." Final Bulletin for Agency Good Guidance Practices, 72 FR 3432-01.

[4] "OCR" refers to the United States Department of Education, Office for Civil Rights. *J.M.*, 224 F. Supp. 3d at 1079.

The general rule regarding an agency's authority to interpret statutory provisions stems from the seminal case of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*: "We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administer interpretations." 467 U.S. 837, 844 (1984). But the deference accorded an agency interpretation assumes a rigorous process by which the agency determines a question of statutory construction and produces a result carrying the force of law. *See* 5 U.S.C. § 553 (providing rulemaking procedures under the Administrative Procedure Act). A guidance letter, such as a Dear Colleague Letter, is afforded no such deference because it is not the product of this rigorous process, but rather is issued by an Agency head to provide information regarding a particular regulation or statutory directive. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference . . . . Instead, interpretations contained in formats such as opinion letters are entitled to respect.") (internal quotations omitted).

The Dear Colleague Letters here are not formal regulations, and they otherwise lack the force of law. Therefore, the letters themselves cannot satisfy the reasonable accommodation prong. A brief examination of the Dear Colleague Letters underscores this point. For example, the 2013 letter includes an enclosure that lists best practices to prevent bullying of students with disabilities; C.C. relies on two of these best practices to support the argument that a violation occurred here. ECF No. 51 at 54–64. But as the letter describes, "[t]here is no one-size-fits-all or simple solution for addressing bullying behavior." *Id.* at 58. And "[w]hen deciding which strategy . . . to use . . . each school needs to consider the relevant factors given its school environment, students' social and cognitive development, and the evidence on programmatic prevention and intervention." *Id.* It is evident the Dear Colleague Letters are meant to aid schools in bullying prevention, but are not regulatory in their effect, demanding strict compliance. The reasonable accommodation prong cannot be satisfied by violation of mere best-practice recommendations. *Cf. Paradise Valley*, 815 F.3d at 1204–06 (remanding on issue of meaningful

access where plaintiffs claimed violation of two specific regulations: 34 C.F.R. § 103.33(b)(1) and 34 C.F.R. § 104.34(a)).

Because the Dear Colleague Letters do not support a claim of regulatory violation, to prevail on summary judgment here C.C. must show a violation of an existing regulatory scheme. He does not make the required showing. C.C. does reference the Code of Federal Regulation, but only in the context of pointing to an overarching framework. *See* ECF No. 42 at 4 (citing 28 C.F.R. § 35.190(b)(2), § 35.149, and 45 C.F.R. § 84.37). These references merely support the general notion that defendants must provide accommodations to disabled students when necessary, including during extracurricular activities. The balance of C.C.'s factual evidence also is thin. First, C.C. relies on a vague reference in a police report to an altercation with Justin at school in which Justin hit him on the shoulder. ECF No. 51 at 5. Second, C.C. claims having only four individuals supervising the football game violates the recommended practice of providing "active adult supervision." ECF No. 42-1 at 8; ECF No. 42-2 at 5; ECF No. 51 at 60. Finally, C.C. argues that by not distinguishing disability-related bullying incidents from non-disability related incidents, defendants violated the recommended practice of "[m]onitor[ing] and track[ing] bullying behaviors." ECF No. 42-1 at 8; ECF No. 42-2 at 5; ECF No. 51 at 62.

These arguments are insufficient to meet C.C.'s burden to justify summary judgment in his favor, and, as described below, are also insufficient to defeat defendants' summary judgment motion. First, assuming the police report's contents would be admitted over a defense objection at trial, its vague reference to a prior "altercation" between C.C. and Justin does nothing to establish defendants were on notice of C.C.'s need for accommodation: "[He] had been bothering [Faith] and [C.C.] because he was jealous and had threatened to assault [C.C.]." ECF No. 51 at 5. C.C. makes no claim the incident was reported to the school, the school became aware of the incident in any way, or the school had the opportunity to record or investigate the incident, and defendants deny they ever became aware of the alleged adversarial history between C.C. and Justin. *See* ECF No. 55 at 7 (citing C. C. Depo. 84:5–13, ECF No 37-5 at 4). While C.C. may have a good faith belief the incident made his need for accommodation obvious, defendants cannot be expected to respond to an issue they did not know existed. *See Doe v.*

*Galster*, 768 F.3d 611, 617–18 (7th Cir. 2014) ("School administrators . . . cannot escape liability by putting their heads in the sand . . . The standard [however] is actual knowledge. School administrators have actual knowledge only of the incidents that they witness or that have been reported to them.") (citations omitted). Second, although a Dear Colleague Letter encourages adequate adult supervision, it does not prescribe an ideal supervisor-to-student ratio such that a failure to adhere to that ratio constitutes a failure to follow best practices that in any event have no regulatory heft. The Letter's generalized advice is consistent with its observation that there is "no one-size-fits-all or simple solution for addressing bullying behavior." ECF No. 51 at 58. Similarly, C.C.'s argument that defendants' failure to distinguish bullying incidents constitutes a regulatory violation is inconsistent with the letter's general premise that bullying should be addressed through "a comprehensive, multitiered behavioral framework used to establish a positive school environment," not strict compliance with a list of best-practices. *Id.* Notably, C.C. provides no evidence showing that defendants did not follow any of the other recommended practices. *See generally* ECF No. 42. Under this reasoning, it follows that adherence to many, but not all, of the recommended practices would still constitute compliance, if such compliance were required, which it is not. Finally, C.C. provides no evidence showing how the adults supervising the football game on August 28, 2015, executed their duties that night; even if the need for accommodation were clear, there is no evidence for the court to assess in determining whether there is an absence of material factual dispute regarding the adequacy of that supervision.

In sum, C.C. has not established that there is no triable issue of fact such that he prevails on liability. In particular, C.C. fails to show defendants violated an applicable regulation, putting them on notice of C.C.'s need for a reasonable accommodation. As such, an essential prong of ADA and § 504 analysis is not met.

    2.  Deliberate Indifference

Even if C.C. were to satisfy all elements under the ADA and § 504, he also does not clear the additional hurdle of deliberate indifference required for an award of damages under Title II and § 504. *Paradise Valley*, 815 F.3d at 1204. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act

11

upon that [] likelihood." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

If the Dear Colleague Letter were to satisfy the accommodation prong of ADA and § 504 analysis, then the first prong of the deliberate indifference analysis would be satisfied. *See Duvall*, 260 F.3d at 1139 ("[W]here the need for accommodation is obvious, or required by statute or regulation[], the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.").

The second prong sets a higher hurdle. "In order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* It is not enough for C.C. to show defendants merely failed to act, by commission or omission; he must show defendants possessed the requisite "*mens rea* of intentional discrimination" in their failure to accommodate. *Paradise Valley*, 815 F.3d at 1204 (emphasis in original and quotations omitted). Here, C.C. presents no such evidence. In his motion, C.C. claims students with disabilities are generally susceptible to bullying and the Dear Colleague Letter put defendants on constructive notice of C.C.'s need for specialized accommodation to prevent bullying. ECF No. 42-1 at 9. Even assuming the Dear Colleague Letter provided constructive notice of a generalized best practice, that notice alone cannot establish the recipient of the Letter's per se discriminatory animus; there must be a factual foundation for the recipient's knowing that bullying behavior is prompted by a disability. *See Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1125 (E.D. Cal. 2018) ("[A] plaintiff . . . does not state a claim under the ADA and Section 504 absent some factual allegation linking the disability and the bullying. To hold otherwise would convert the ADA and Rehabilitation Act into generalized anti-bullying statutes.") (quoting *Eskenazi–McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 233 (E.D.N.Y. 2015)).

C.C.'s counsel also argues defendants "knew—after the first assault—that our client was being harassed on the basis of his disability." ECF No. 42-1 at 9. To support this assertion, C.C. cites the August 28, 2015 police report in which he informed the investigating officer that he "told [redaction] about the disorder several days prior to the assault because

12

[redaction] had hit him on the shoulder during school." ECF No. 51 at 5. This report, C.C. claims, combined with information in a database defendants maintained of bullying incidents, shows that defendants knew about C.C.'s vulnerable position before the August 28, 2015 attack; thus, their failure to provide adequate accommodations to prevent bullying amounts to deliberate indifference. ECF No. 42-1 at 9–10. The evidence to which plaintiff points, however, taken as true, does not show defendants were informed of the purported "first assault." As noted above, the police report does not reflect that C.C. told the school about the shoulder-hitting incident, nor does C.C.'s testimony. At deposition, C.C. said the opposite:

> Q: Do you claim that you went to somebody at the school before this [football game] altercation happened and that you told them, hey I need more protection, I'm worried about my protection or whatever protection you're providing is not enough before the altercation; you didn't have any conversations like that with the school, did you?
>
> A: No, I did not.

C. C. Depo. 81:6-13. As for the database of bullying incidents, C.C. cites the admission in a letter from defense counsel, that defendants "keep records of incidents of violence for use in the completion of mandatory and public reports"; but this generalized statement does not support the conclusion that defendants were actually informed of or made a record of the first incident when Justin hit C.C. Ayres Letter, ECF No. 51 at 52.[5]

The state of the record does not satisfy the clear notice standard required before liability attaches in ADA-bullying cases. *Cf. S.S. v. Eastern Kentucky University*, 532 F.3d 445 (6th Cir. 2008) (granting defendants' summary judgment where evidence of active school response and investigation following numerous peer-on-peer harassment complaints); *Estate of Lance v. Lewisville Independent School Dist.*, 743 F.3d 982 (5th Cir. 2014) (no deliberate indifference where district exhibited pattern of timely response to student's reported bullying incidents); *K.R.S. v. Bedford Cmty. Sch. Dist.*, 109 F. Supp. 3d 1060, 1080 (S.D. Iowa 2015) (plaintiff who suffered from ADD survived summary judgment by presenting evidence of

---

[5] Defendants object to the admissibility of the Ayres letter based on hearsay and lack of foundation. ECF No. 55-1 at 2.

13

pervasive bullying and harassment, including getting pelted in head by members of football team, created factual dispute as to whether the school was actually aware of the bullying); *see also Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 669 (E.D. Mich. 2015) ("Plaintiff has not proffered any evidence that [student] was harassed based on his disability. Indeed, whether the other young students even knew that [student] was disabled is unclear at best."). C.C. has not shown the absence of genuine dispute of material fact as to defendants' deliberate indifference such that he can prevail on his motion.

In evaluating plaintiff's evidence, the court notes the Declaration of Dr. Preston Gelhart filed in support of C.C.'s summary judgment reply. *See* ECF No. 62. This declaration is untimely under Local Rule 230(d), providing that replies are due not less than seven days prior to hearing. Even if timely filed, Dr. Gelhart's declaration does not affect the weight of evidence to create a triable issue. First, although Dr. Gelhart opines that the school district breached "Federal, State and Case Law" and "knew or should have known that [C.C.] was subject to the risk of assault," ECF No. 62 at 4, the court need not accept as true the conclusory testimony of a purported expert witness where there are no facts as here to support such assertions. *See* Fed. R. Evid. 704; *see also United States v. Various Slot Machs. on Guam*, 658 F.2d 697, 699 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."). Second, even if the court accepted Dr. Gelhart's testimony as true, he does not point to specific facts establishing defendants were actually aware of C.C.'s need for extracurricular accommodations. Dr. Gelhart's declaration merely sets out a number of legal conclusions that mirror the arguments contained in C.C.'s summary judgment and opposition papers, and, in part, address legal theories not at issue, such as negligence, in this case. *See*, *e.g.*, ECF No. 62 at 3–4 ("The identified absence of ordinary supervision . . . was a breach of Federal, State, and Case Law."; "[Defendants] were deliberately indifferent to his need for special education classes [and in] recognizing a previous bullying incident"; "there is an affirmative duty on the school district to take all reasonable steps to protect its students").

In light of the foregoing, C.C.'s motion for partial summary judgment is DENIED in full.

B.     Defendants' Motion for Summary Judgment

Defendants move for summary judgment claiming the undisputed facts defeat, as a matter of law, a finding of intentional discrimination because there is no evidentiary support defendants knowingly and intentionally denied C.C. an accommodation he was entitled. ECF No. 37-1. Defendants also urge summary judgment because the second prong of ADA and § 504 analysis is not satisfied given that noncompliance with a Dear Colleague Letter does not constitute a regulatory violation, and C.C. cannot show his need for accommodation was obvious. ECF No. 59.

In opposition, C.C. maintains his position that deliberate indifference is established through a "wanton disregard for (1) departmental regulations addressing harassment of students with disabilities and (2) obvious areas of the school where bullying frequently occurs." ECF No. 56. C.C. points here as well to the Dear Colleague Letters to show the school was under an obligation to adhere to the recommended bullying-prevention principles, those principles put the school on constructive notice that C.C. was susceptible to bullying, and because the first "assault" occurred "during lunch at school, . . . defendants are deemed to have had notice of what occurred in those area[s] under departmental guidelines." *Id.* at 3–6.

Although the court considers each party's summary judgment motion on its own, *Nat'l Grange*, 115 F. Supp. 3d at 1177, because the defense motion raises issues identical to those raised by plaintiff's motion, the court addresses below only those defense arguments it has not already discussed above.

The court has accepted the defendants' arguments that the Dear Colleague Letters in the record here do not carry the weight of regulations, and therefore a finder of fact could not find a regulatory violation here. *J.M. by & through Mandeville v. Matayoshi*, 729 F. App'x 585, 586, n.1 (9th Cir. 2018). Because there can be no regulatory violation, the only plausible avenue by which C.C. could defeat summary judgment would be to show "that the [defendants'] federally funded program denied [him] services that [he] needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations." *Paradise Valley*, 815 F.3d at 1204. As defendants assert, and for the same reasons discussed

above, this avenue is foreclosed by the weight of the undisputed evidence.  There is no evidence the school became aware of or failed to act in response to an obvious need to protect C.C. based on the first alleged "assault."  *See* C. C. Depo. 81:6-13.  The mere fact that the incident occurred during the school lunch hour, without any evidence that a school administrator or staff witnessed it, is insufficient to establish notice.  There is no other evidence that the school was provided any kind of notice of the need for accommodation prior to the football game on August 28, 2015.  *See* T. Csutoras Depo. 19:21–25, ECF No. 37-5.  And there is no evidence showing the school failed to respond or displayed a pattern of failing to respond to known 504 accommodation needs.  *See* Christie Decl. ¶¶ 6–16, ECF No. 37-4.  C.C. also has not pointed to any evidence to support his theory the school acted with deliberate indifference or because of C.C.'s disability.  *See id.* ¶ 19; *see also* T. Csutoras Depo. 21:3–6, 24:23–25.

For these reasons, defendants have met their initial burden of establishing that no material question of fact exists as to their liability under Title II of the ADA or § 504 of the Rehabilitation Act.  Because C.C. has not rebutted defendants' evidence to show a triable question exists, summary judgment must be entered in defendants' favor.

IV.   CONCLUSION

For the reasons set forth above, plaintiff's motion for partial summary judgment, ECF No. 42, is DENIED, and defendants' motion for summary judgment, ECF No. 37, is GRANTED.  The Clerk of Court is directed to enter judgment in favor of defendants and CLOSE this case.

IT IS SO ORDERED.

DATED: November 18, 2019.

_____
UNITED STATES DISTRICT JUDGE

16